### Haddox & Company v. Ohio Valley Fire & Marine Insurance Company.

(Decided June 15, 1920.)

### Appeal from Ballard Circuit Court.

Insurance—Fire Insurance—Liability on Policy Issued in Lieu of Another Policy Without Notice to the Insured.—At the request

of an insurance broker, a company renewed a $2,000.00 policy. As it could not reinsure $1,000.00 of the policy, the company decided to issue a $1,000.00 policy in lieu of the $2,000.00 policy and entrusted the delivery of the policy to the insurance broker, who transmitted it through another who was the agent of the company for certain purposes. Insured accepted and paid the premium on both policies without being notified that the $1,000.00 policy was issued in lieu of the $2,000.00 policy. Between that time and the fire, which occurred twenty-three days later, no steps were taken to cancel either policy: Held, that as the company did not advise the insured before the fire of the condition on which the policy was issued, the company will not be permitted to rely on that defense after the loss has been incurred, and that the company was bound on the policy.

JOHN E. KANE for appellant.

MOCQUOT & BERRY for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

T. E. Haddox & Company, whose stock of merchandise had been destroyed by fire, brought suit against the Ohio Valley Fire & Marine Insurance Company to recover on two polices of insurance, one for $2,000.00 and the other for $1,000.00. The trial court instructed the jury to find for plaintiffs on the $2,000.00 policy, and for the defendant on the $1,000.00 policy. Plaintiqs appeal.

The firm of T. E. Haddox & Company, which was composed of T. E. Haddox, T. C. Haddox and Angie Summers, now Angie Summers Tier, was engaged in the mercantile business at LaCenter, Ballard county. T. E. Haddox and T. C. Haddox are father and son. The management of the business was in the hands of the son, T. C. Haddox, until October, 1917, when he was drafted into the United States army. After that the father, T. E. Haddox, took charge of the business.

The Ohio Valley Fire & Marine Insurance Company is an insurance company located at Paducah. It had no regular agent in Paducah except R. G. Fisher who worked in the home office of the company, and who was paid a salary and not commissions as an agent. However, it issued policies at the request of the various insurance agencies in that city. Among the agencies was that of C. E. Jennings & Company, who represented several companies and who placed insurance in such companies as they desired, unless the customer directed otherwise.

Through a Mr. Lovelace, the local insurance agent at LaCenter, T. C. Haddox, the son, procured two $2,000.00 policies in the Ohio Valley Fire & Marine Insurance Company. These policies were issued at the request of C. E. Jennings & Company. One was issued on December 4, 1916, and the other on March 7, 1917. When the policy of December 4, 1916, expired, Jennings & Company notified the insurance company to renew the policy. The company had reinsured $1,000.00 of the original policy and thought that it could be reinsured again. Thereupon, it issued a $2,000.00 policy and mailed it to C. E. Jennings & Company. At that time, J. S. Peal had succeeded Mr. Lovelace in the insurance business at LaCenter. He had received a license from the insurance department authorizing him to act as agent of the Ohio Valley Fire & Marine Insurance Company when empowered by that company to do so. Though no formal appointment was ever made, Peal was furnished with an insurance register, blotters, letter heads and other stationery for use by him as agent. He was also delivered some "hail" policies to be signed and delivered by him to anyone desiring "hail" insurance. According to the company, he was never empowered to act as fire insurance agent, and Peal admits that he never did act in that capacity, but procured policies through C. E. Jennings & Company, with whom he divided his commissions. When Jennings & Company received the renewal policy on December 4, 1917, they mailed it to Peal to be delivered to T. E. Haddox & Company. As soon as the company's general manager learned of the issuance of the policy, he attempted to reinsure $1,000.00 of it as he had formerly done in other companies. Being unable to do so, he notified Jennings & Company, either on the 4th or 5th of December, that the company could not carry the $2,000.00 policy, but that Jennings & Company would have to get it elsewhere, and requested them to return the policy. Jennings asked that they carry as much of the policy as they could, and the company finally agreed to issue another policy of $1,000.00 in lieu of the $2,000.00 renewal policy which had previously been sent to Jennings. Jennings agreed to accept this in lieu of the $2,000.00 policy and to return the $2,000.00 policy. Jennings "thinks" that he sent the $1,000.00 policy to Peal with directions to keep it and take up the $2,000.00 policy, but Peal testified that he

received no such instructions.  Both the $2,000.00 policy and the $1,000.00 policy were delivered to T. E. Haddox, who accepted them and paid the premium thereon to Peal.  T. E. Haddox admits that he had never ordered either of the policies, and that he accepted and paid for them because he was there to protect the interest of the firm.  Peal never informed T. E. Haddox that the $1,000.00 policy was issued in lieu of the $2,000.00 policy. Jennings claimed that on December 15th he wrote Peal a letter, notifying him to send in the $2,000.00 policy in lieu of which the $1,000.00 policy had been issued.  Peal says that he never received the letter and the $2,000.00 policy was never taken up.  A few days later the fire occurred.  In the early part of January Peal settled with Jennings & Company for the premium on the $1,000.00 policy, and Jennings & Company settled with the Ohio Valley Fire & Marine Insurance Company.  Peal also offered to settle with Jennings & Company for the premium on the $2,000.00 policy, but Jennings & Company refused to receive it.  In paying both premiums to Peal, the firm check was made payable to the Ohio Valley Fire & Marine Insurance Company, and was endorsed by Peal as agent.

The argument in behalf of the company is as follows: The $1,000.00 policy was issued in lieu of the $2,000.00 policy, and the company never intended to be bound thereon unless the $2,000.00 policy was surrendered. The $1,000.00 policy was not ordered by T. E. Haddox & Company, nor was it in renewal of an existing policy. Jennings & Company were not the agents of the insurance company and had no authority to deliver the $1,000.00 policy except upon the condition that the $2,000.00 policy was to be surrendered.  Since the $2,000.00 policy was not surrendered the result is that the company issued a policy upon which it never intended to be bound, and T. E. Haddox & Company accepted and paid for a policy which they did not apply for or expect to be issued to them.  Hence, there was no meeting of the minds of the parties, and the company was not liable.  Though it be true that Jennings & Company were not the agents of the insurance company in the ordinary sense of that word, there can be no doubt that they were its agents for the purpose of delivering the $1,000.00 policy and securing the surrender of the $2,000.00 policy.  It is equally true that they were in no

sense the agents of Haddox & Company, since the latter did not ask or employ them to procure the insurance. In delivering the policy and collecting the premium, Jennings & Company acted through Peal, who was the local agent of the insurance company at LaCenter for certain purposes. There is no satisfactory evidence that Peal, prior to the delivery of the $1,000.00 policy, was apprised of the conditions on which it was delivered. Certain it is that Haddox & Company were not notified of such condition when the $1,000.00 policy was delivered. Furthermore, the fire did not occur until twenty-three days after the delivery of the policy, and during that time no steps were taken to acquaint Haddox & Company of the condition, or to cancel either one of the policies. The fact that the insured had not applied for the policy is not controlling, since an insurance company may make a binding contract of insurance by delivering a policy and accepting the premium thereon, even though the insured never requested that the policy be issued. It was within the apparent authority of both Jennings & Company and of Peal to deliver the policy and accept the premium, and Haddox & Company were not bound by any instruction of which they were not apprised. On the contrary, when they accepted the $1,000.00 policy and paid the premium, they had every reason to believe that they were obtaining a binding contract of insurance. Their lack of knowledge to the contrary was not due to any fault on their part, but was due solely to the negligence of those entrusted by the company with the delivery of the policy. In view of these facts the case is the same as if the company had sent the policy from its home office to the insured and collected the premium without any instructions that it was in lieu of the $2,000.00 policy and had failed between that time and the fire to acquaint the insured of that fact, or to take any steps to cancel either of the policies. Not having advised the insured before the fire of the condition on which the policy was issued, the company will not be permitted to rely on that defense after the loss has been incurred. We therefore conclude that the court should have directed the jury to find for the plaintiff instead of the defendant on the $1,000.00 policy.

Judgment reversed and cause remanded for a new trial consistent with this opinion.